[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Criminal Appeal from Hamilton County Court of Common Pleas, Trial No. B-0302680.
Affirmed in Part, Sentence Vacated, and Cause Remanded.
 DECISION.
{¶ 1} Defendant-appellant Reamer Bell appeals his conviction for burglary, assigning errors ranging from pretrial identification to sentencing — and everything in between. We affirm everything but the sentence. Because the trial court did not follow the statutory guidelines, we must vacate Bell's sentence and remand the case for resentencing.
 {¶ 2} In the late evening of St. Patrick's Day 2003, Michael Weinstein noticed somebody scratching or tapping at his basement window. Weinstein went to an upstairs balcony and looked down at a man wearing a denim jacket and a hat who was near the basement window. Weinstein yelled and the man left the premises. In the meantime, Weinstein's grandmother, who also lived in the house, had called the police.
 {¶ 3} A short while later and a few houses away, Cory Jones was sitting in his home watching television. He heard glass breaking in the basement and ran down the steps, grabbing a broom on the way. When Jones got to the bottom of the steps, he saw broken glass on the floor and Bell standing there and looking puzzled. Jones called up the stairs to Tysha McClendon, who also lived in the house and had been sleeping upstairs. McClendon called the police. Jones held Bell at bay with the broom until the police arrived. Jones did not have to wait long because the police were already in the neighborhood investigating Weinstein's call.
 {¶ 4} Officers Eric Kaminsky and Lori Deardorff arrested Bell and took him to Weinstein's house. Even though he could not describe the man's face, Weinstein identified Bell as the man who had been at his basement window. His identification was based solely on Bell's hat and denim jacket.
 {¶ 5} Jones was charged with burglary of the Jones/McClendon home and attempted burglary of the Weinstein home. The jury found Bell guilty of burglary, but not guilty of the attempted burglary. Bell now appeals.
 {¶ 6} Bell assigns six errors: (1) and (2) the verdict was contrary to the sufficiency and the manifest weight of the evidence; (3) the trial court erred by failing to grant Bell's motion to suppress the identification evidence; (4) two African-American potential jurors should not have been dismissed; (5) the trial court should have granted separate trials for the two separate counts in the indictment; and (6) the sentence was contrary to law.
 I. Sufficiency and Weight of the Evidence {¶ 7} In his first two assignments, Bell argues that the jury's guilty verdict was contrary to the sufficiency and the manifest weight of the evidence. We discuss these assignments together.
 {¶ 8} In reviewing a record for sufficiency, we must determine whether any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt, when viewing the evidence in the light most favorable to the prosecution.[1]
 {¶ 9} A review of the manifest weight of the evidence puts the appellate court in the role of a "thirteenth juror."[2]
We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[3] "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the case."[4] And a new trial should be granted on the weight of the evidence only in exceptional cases.[5] This case is exceptional only in its introduction of a broom as a crime-fighting device.
 {¶ 10} The jury found Bell guilty of burglary under R.C.2911.12(A)(2), which prohibits a person from trespassing by force, stealth, or deception "in an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense."
 {¶ 11} After hearing glass break, Jones found Bell in his basement and held Bell at broompoint until the police arrived. When the police arrived, there were two things worth noting in the basement: broken glass and Bell. Bell does not even dispute that this was what had occurred. A more convincing case of burglary would be hard to find.
 {¶ 12} When viewing the evidence in the light most favorable to the prosecution (given these facts, it is hard to say what other light there can be), a rational trier of fact could easily have found all of the elements of burglary satisfied. And having weighed the evidence and considered the credibility of the witnesses, we cannot say that the trier of fact lost its way or created a manifest miscarriage of justice in finding Bell guilty.
 {¶ 13} Through his trial counsel, Bell argued that he did not enter the Jones/McClendon home to steal anything. Instead, Bell argued that he was merely looking for a marijuana deal. Therefore, following Bell's logic, he was not guilty of burglary. But Bell's argument fails to convince us, just as it failed to convince the jury.
 {¶ 14} We therefore overrule Bell's first and second assignments of error.
 II. The Motion to Suppress the Identification {¶ 15} In his third assignment, Bell argues that Weinstein's pretrial identification should have been suppressed.
 {¶ 16} A trial court should suppress a pretrial identification of a suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances.[6] In deciding whether an identification was unreliable, a court should consider the following: (1) the witness's opportunity to view the suspect during the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the suspect; (4) the witness's certainty; and (5) the time elapsed between the crime and the identification.[7]
 {¶ 17} The trial court held a hearing on the motion to suppress. The court heard testimony from Weinstein and Officers Kaminsky and Deardorff. All three gave the same basic story: the police showed Bell to Weinstein, said that they had found Bell down the street, and asked Weinstein if Bell was the same man who had been at his house earlier that night. Weinstein said that Bell was the man at his basement window, but based his identification solely on Bell's clothes.
 {¶ 18} Based on the testimony, the trial court found that the police did nothing suggestive. The court also examined whether the identification was reliable. Weinstein testified that he looked at the man from the balcony for about 10 seconds. He described the man's clothes, but not his face. Weinstein admitted that he was not 100 percent certain, but that, based on the clothing, it was the same man. And only 20 minutes had elapsed between the crime and the identification.
 {¶ 19} Having reviewed the entire record, we agree that it was not improper for the trial court to deny Bell's motion to suppress the identification.
 {¶ 20} Further, Weinstein's identification did not even lead to a conviction. The jury found Bell not guilty of the attempted burglary of the Weinstein home. Any potential error that could have arisen from a pretrial identification problem would have been harmless.
 {¶ 21} We therefore overrule Bell's third assignment of error.
III. The Batson Claims
 {¶ 22} In his fourth assignment, Bell argues that the prosecution should not have been allowed to use peremptory challenges to dismiss two African-American potential jurors. Bell is mistaken.
 {¶ 23} In Batson v. Kentucky,[8] the Supreme Court held that purposeful discrimination in the use of peremptory challenges to exclude members of a minority group violates the Equal Protection Clause of the United States Constitution.
 {¶ 24} A Batson analysis occurs in three steps: (1) the opponent of the peremptory strike must make a prima facie case of racial discrimination; (2) the party making the peremptory challenge must present a racially neutral explanation for the challenge; and (3) the trial court must decide whether the opponent has proved a purposeful racial discrimination.[9]
The burden of persuasion is on the opponent of the strike.[10]
 {¶ 25} Bell made two Batson challenges. Bell, who also is African-American, argued that the prosecutor was discriminating against those two potential jurors based on their race.
 {¶ 26} But the prosecutor offered race-neutral explanations for both peremptory challenges. The first juror in question had been the victim of a burglary in the past and was "disappointed" with the outcome of the investigation into that crime. And the second juror worked with people who had substance-abuse problems and with people just getting out of prison. Because both of these jurors had been involved in situations similar to Bell's case, the prosecutor argued that they were properly challenged. Finding that the prosecutor had provided sufficient race-neutral grounds for the peremptory challenges, the trial court agreed. And so do we.
 {¶ 27} We therefore overrule Bell's fourth assignment of error.
 IV. Motion for Relief from Prejudicial Joinder {¶ 28} In his fifth assignment, Bell argues that he was prejudiced by the trial court's refusal to grant separate trials for the two counts against him. Bell is mistaken.
 {¶ 29} Ohio courts favor joinder and the avoidance of multiple trials for many reasons. These reasons include conserving time and expense, diminishing the inconvenience to witnesses, and minimizing any possible incongruous results in successive trials before different juries.[11]
 {¶ 30} If a defendant would be prejudiced by a joinder of offenses at a single trial, the court must order separate trials for the counts.[12] A defendant claiming error in the trial court's refusal to grant separate trials for multiple charges has the burden of affirmatively showing that his rights were prejudiced and that the trial court abused its discretion in refusing to separate the charges for trial.[13]
 {¶ 31} When a defendant claims prejudice by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would have been admissible even if the counts were severed; and (2) if not, whether the evidence of each crime was separate and distinct.[14]
 {¶ 32} We reiterate that Bell broke a basement window, entered the Jones/McClendon home, and was held at broompoint until the police arrived. Any evidence from the alleged Weinstein attempted burglary did not add anything more incriminating to the case, nor did it prejudice Bell.
 {¶ 33} The trial court determined that there was nothing indicating that the evidence from the separate crimes could not be used in separate trials for each charge. And the trial court noted that the jury could attach whatever weight it deemed appropriate to the information from the separate incidents. The jury evidently did not think much of the attempted-burglary charge, as it found Bell not guilty. We cannot say that the trial court abused its discretion in denying Bell's motion for relief from prejudicial joinder.
 {¶ 34} We therefore overrule Bell's fifth assignment of error.
 V. Sentencing {¶ 35} In his sixth and final assignment, Bell argues that his seven-year sentence was contrary to law. Specifically, Bell contends that the trial court failed to comply with the sentencing guidelines. Bell is right.
 {¶ 36} We must reverse the sentence and remand the case for resentencing because the trial court failed to inform Bell at the sentencing hearing of his probation, post-release-control, and drug-testing responsibilities.[15] The court also failed to inform Bell that the parole board could increase his term for certain violations of prison rules.[16]
 {¶ 37} The trial court did include the appropriate language in its sentencing entry. But the court was also required to inform Bell of this information at the sentencing hearing.[17] We must therefore vacate the sentence and remand Bell's case for resentencing in accordance with our decision.
 {¶ 38} Because we are remanding for resentencing, we need not comment on Bell's seven-year sentence.
 {¶ 39} We therefore sustain Bell's sixth assignment of error.
 {¶ 40} In Blakely v. Washington,[18] the Supreme Court recently struck down Washington state's sentencing structure. The full breadth of that decision is not yet clear. Some commentators believe that the entire federal sentencing guidelines are now dead. We need not examine the full reach ofBlakely. But we do need to determine what effect, if any,Blakely has on Bell's sentence.
 {¶ 41} The Blakely decision states that a trial court cannot enhance a penalty beyond the statutory maximum based on any factors other than those on which the jury found the defendant guilty.
 {¶ 42} Bell was convicted of burglary, a second-degree felony, which carries a penalty of two to eight years' imprisonment.[19] The trial court sentenced Bell to seven years' imprisonment — a penalty that falls within the standard statutory range. Bell's sentence was therefore not unconstitutional under Blakely.
 {¶ 43} Accordingly, we affirm the trial court's judgment to the extent of the finding of guilt, but vacate the sentence and remand the case for resentencing in accordance with law.
Judgment affirmed in part, sentence vacated, and cause remanded.
Hildebrandt, P.J., and Gorman, J., concur.
The court has recorded its own entry on the date of the release of this decision.
[1] State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492.
[2] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541.
[3] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[4] Section 3(B)(3), Article IV, Ohio Constitution.
[5] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717.
[6] State v. Waddy (1992), 63 Ohio St.3d 424,588 N.E.2d 819.
[7] Neil v. Biggers (1972), 409 U.S. 188, 93 S.Ct. 375.
[8] (1986), 476 U.S. 79, 106 S.Ct. 1712.
[9] Id.; State v. Herring, 94 Ohio St.3d 246, 2002-Ohio-796,762 N.E.2d 940.
[10] Id.
[11] State v. Torres (1981), 66 Ohio St.2d 340,421 N.E.2d 1288.
[12] See Crim.R. 14.
[13] State v. Torres (1981), 66 Ohio St.2d 340,421 N.E.2d 1288.
[14] State v. Schaim, 65 Ohio St.3d 51, 1992-Ohio-31,600 N.E.2d 661.
[15] See R.C. 2929.19(B)(3); State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473.
[16] Id.
[17] Id.; see also, State v. Martin, 2004-Ohio-3330, 11th Dist. No. 2002-T-0111.
[18] (2004), ___ U.S. ___, ___ S.Ct. ___.
[19] R.C. 2911.12(C) and 2929.14(A)(2).